IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BETTINA JORDAN,
          Plaintiff,

v.                                                Civil Action No. 3:12-cv-00759-JAG

PATRICK R. DONAHOE,
*Postmaster General of the*
*United States Postal Service,*
          Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the motion for summary judgment filed by Patrick Donahoe, the Postmaster General of the United States Postal Service.[1] In this case, the *pro se* plaintiff and current United States Postal Service ("USPS") employee, Bettina Jordan, claims that agents of the USPS retaliated against her in violation of Title VII and also engaged in slander, libel, defamation, and intentional infliction of emotional distress, subjecting the USPS to liability under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2671 *et seq.* As explained below, the Court grants summary judgment to the defendant because Jordan fails to establish the necessary elements of any cause of action.

### I.    STATEMENT OF FACTS

The plaintiff, Bettina Jordan ("Jordan"), works for the United States Postal Service. In 2012, Jordan filed two separate actions in this district against the Postmaster General, Patrick Donahoe, alleging various forms of discriminatory conduct under Title VII and the

---

[1] Federal employees bringing suit against their employing department, agency or unit must name the head of the department, agency, or unit as the defendant. 42 U.S.C. § 2000e-16(c). Nevertheless, the Court refers to the USPS, rather than Postmaster Donahoe, as the defendant throughout this opinion.

Rehabilitation Act.[2] On February 14, 2012, Jordan suffered a physical injury on the job. She therefore accepted a "limited duty" assignment and has collected workers' compensation benefits since that time. Jordan bases the instant action—now her third—on the manner in which USPS handled her workers' compensation reimbursement, alleging that it constituted retaliation under Title VII and violated the Federal Tort Claims Act ("FTCA").

Employees of the USPS seeking workers' compensation must periodically submit documentation showing their eligibility for continued benefits. They submit the forms to the Office of Workers' Compensation Programs ("OWCP"). OWCP reviews and processes the documentation. The record indicates that OWCP processed Jordan's claims without incident through July, 2012.

In August, 2012, Christie Wright-Dillon ("Wright-Dillon"), a claims manager of OWCP, made changes to Jordan's claim forms to reflect the correct number of work-hours for which Jordan deserved compensation. (Def.'s Mem. Supp. Mot. Summ. J. ("Defendant's Brief"), Ex. 2, ¶ 4.) Because of her injury, Jordan had willingly accepted a limited-duty job assignment in March, 2012. (Pl.'s Resp. Mem. in Opp'n to Def.'s Mem. Supp. Mot. Summ. J. ("Plaintiff's Brief"), Ex. F, ¶ 4.) She was thus entitled to compensation based on a four-hour work-day, but, due to administrative error, USPS compensated her based on a full, eight-hour work-day until August, 2012. (Defendant's Brief, Ex. 2, ¶ 4.) Additionally, Jordan appears to have submitted backdated and inconsistent medical notes to OWCP. (*Id.*) Based on these issues, Wright-Dillon undertook a reevaluation of Jordan's claim in September, 2012. (*Id.* at ¶ 5.)

---

[2] The Court consolidated these two actions as Case No. 3:12cv54, and that case remains under review. It focuses on allegations of sexual harassment, discrimination, and retaliation under Title VII and failure to accommodate stress-related disabilities under the Rehabilitation Act.

Pursuant to this reevaluation, Wright-Dillon sent a letter to Jordan, a Department of Labor Claims Examiner named Sharon Belin, and the USPS Manager of Health and Resource Management, L.T. Ponder. (Plaintiff's Brief, Ex. D.) Belin and Ponder both played a role in handling Jordan's OWCP claims. In her letter, Wright-Dillon questioned Jordan's submissions and asked for clarification on certain issues, such as why Jordan was seeing a family practitioner rather than a medical specialist. (*Id.* at 1.) The record does not indicate that Wright-Dillon or anyone else ever distributed these letters outside the initial group of recipients.

Jordan claims that the statements and requests within these letters amount to defamation and intentional infliction of emotional distress.[3] She also asserts that Wright-Dillon's changes to Jordan's OWCP forms and request for reevaluation constitute retaliation for Jordan's filing of an EEOC charge in November 2011.[4]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the movant establishes that no genuine dispute of any material fact exists and that judgment as a matter of law is thus appropriate. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After an adequate period of time for discovery, Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(a). The court resolves all genuine factual disputes and inferences in favor of the non-moving party, *United States v.*

---

[3] Jordan further asserts that she was "denied OWCP claim for compensation reimbursement in which she is entitled to per Federal Employees' Compensation Act." (Plaintiff's Brief 2 (errors in original).) The Court reads Jordan's pleadings as bringing various tort claims and a retaliation claim under Title VII, but not a Federal Employees' Compensation Act ("FECA") claim. Although Jordan's opposition brief mentions the job retention rights provided to federal employees through FECA, she does not contend that she has lost her position. (Plaintiff's Brief 12.) Accordingly, the Court need not discuss this statute. *See generally* 5 U.S.C. § 8101, *et seq.*
[4] This EEOC charge formed the basis of her March, 2012 and July, 2012 lawsuits.

3

*Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*), and determines whether there is a genuine issue for trial based on the entire record as a whole. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See id.* at 586–88. The non-movant may not rest upon claims within its pleading, but must "go beyond the pleadings," *Celotex*, 477 U.S. at 324, and "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (emphasis omitted) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law."). Establishing a genuine issue for trial requires the non-movant to present sufficient evidence supporting each element of the claim, such that a reasonable individual could find in the non-movant's favor. *Harik v. Nat'l Aeronautics and Space Admin.*, 2006 WL 2381964, at *7 (E.D. Va. Aug. 16, 2006). Trial judges have an affirmative obligation to preclude factually unsupported claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

## III. DISCUSSION

### A. Retaliation

Jordan claims that she suffered retaliation in violation of Title VII of the Civil Rights Act of 1964 due to her filing EEOC charges. 42 U.S.C. § 2000e, *et seq.* The Court rejects her claim because she cannot prove an adverse employment action and because no causal connection exists between Jordan's EEOC filing and the manner in which OWCP handled her workers' compensation. Furthermore, because the USPS merely corrected an administrative error regarding Jordan's workers' compensation, it obviously had a legitimate reason for the alleged adverse employment action, thus rebutting any claim she might make.

In order to establish a prima facie claim of retaliation, Jordan must demonstrate that (1) she participated in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected activity and her employer's adverse employment action. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004) (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)). She need not, however, establish that she first suffered from discrimination in order to bring a successful retaliation claim. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–67 (2006).

Filing a claim with the EEOC unquestionably represents protected activity. *See, e.g., Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998). In the instant action, however, Jordan suffered no adverse employment action in response to her EEOC charge. In the context of retaliation claims, the Supreme Court has held that a plaintiff must show that a *reasonable* employee would have found the action *materially* adverse. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This requirement of material adversity serves to distinguish significant harms from trivial ones. *Id.* (drawing the

distinction between legally cognizable adverse employment actions and "petty slights or minor annoyances").

Jordan alleges that the reduction in her compensable hours and the investigation of her OWCP filings together constitute an adverse employment action. OWCP, however, simply corrected an error in her filings and adjusted her compensation to reflect the amount that she actually deserved under the law. These actions are not materially adverse.[5]

Even if OWCP's treatment constitutes an adverse employment action, Jordan's retaliation claim still fails because she cannot show a causal connection between her initial EEOC charge and the USPS's actions regarding her workers' compensation paperwork. Jordan contends, for instance, that Wright-Dillon contacted Jordan's supervisors at her workplace and thus discovered her protected activity. (Plaintiff's Brief 9.) She also asserts that Phyllis Morris-Griffith ("Morris-Griffith"), an Occupational Health Nurse Administrator, played some role in the alleged retaliation when she reviewed Jordan's medical documentation and contacted Jordan's physician.[6] (*Id.* at 7.)

The defendant provides affidavits to negate any inference of a causal connection between the Jordan's EEOC activity and the allegedly adverse actions taken by the USPS. Wright-Dillon states unequivocally that "at the time I was working on Ms. Jordan's OWCP claim in 2012, I had

---

[5] Furthermore, even if Jordan could somehow prove that the correction of her workers' compensation constitutes an adverse employment action, the defendant clearly had a legitimate justification for its actions, given that the USPS was compensating Jordan more than she was legally entitled to receive. *See McKelvy v. Capital One Servs., LLC*, 2010 WL 3418228, at *3 (E.D. Va. Aug. 20, 2010), *aff'd*, 431 Fed. Appx. 237 (4th Cir. 2011) (recognizing that a defendant can rebut a *prima facie* showing of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse action).

[6] In her role as Occupational Health Nurse Administrator for the Capital Metro Area, Morris-Griffith provides administrative support and consultation to the USPS on occupational health issues, including reviewing medical documentation submitted to OWCP. (Defendant's Brief, Ex. 3 at 2.) At the request of Wright-Dillon, she reviewed Jordan's medical documents and contacted Jordan's physician for clarification of certain portions of the documentation. (*Id.*)

no idea that Ms. Jordan had ever engaged in EEO activity." (Defendant's Brief, Ex. 2, ¶ 7.) "The very first time I became aware that Ms. Jordan had engaged in EEO activity was on January 10, 2013, when I received a telephone call from [a USPS] EEO Specialist . . . to discuss an EEO complaint that Ms. Jordan had filed."[7] (*Id.* at ¶ 8.) Morris-Griffith likewise maintains that she "had no knowledge that Ms. Jordan had ever engaged in EEO activity" when she reviewed Jordan's medical documentation. (Defendant's Brief, Ex. 3, ¶ 5.) Jordan offers no evidence to rebut the sworn statements of these employees, who she says retaliated against her.[8] The mere fact that Wright-Dillon had incidental contact with Jordan's supervisors prior to learning of the protected activity proves nothing. Jordan's failure to demonstrate a plausible, causal connection dooms her retaliation claim.

Jordan further attempts to draw the inference of a causal connection by pointing to the supposedly close temporal proximity between the EEOC charge and the adverse employment action. (Plaintiff's Brief 8.) Jordan filed her EEOC claim in November, 2011, and she began experiencing issues with her OWCP forms in August, 2012. This nine-to-ten-month lapse stretches too far for an inference of causality based on temporal proximity. *See Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that only "very close" temporal proximity can establish causality and that a gap of three or four months is too long); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged

---

[7] Wright-Dillon also says that "[t]he actions I took relating to Ms. Jordan's OWCP claim in 2012 were taken in the normal course of my work and were an ordinary and routine part of my job duties." (Defendant's Brief, Ex. 2, ¶ 7.) Despite claiming in her opposition brief that Wright-Dillon acted outside the scope of her employment, Jordan fails to offer any evidence to rebut Wright-Dillon's statement. (Plaintiff's Brief 8.)

[8] Unlike the defendant, she offers no valid affidavits to support the notion that Wright-Dillon or anyone else involved in the processing of her workers' compensation knew of her protected activity.

adverse employment action . . . negates any inference that a causal connection exists between the two."). And, again, if the USPS sought to retaliate against Jordan, it would not have overpaid her from February to July of 2012. Even more fundamentally, causation cannot exist, regardless of temporal proximity, when the party taking the "adverse action" has no knowledge of the protected activity. Under such circumstances, the proximity is mere coincidence. For the foregoing reasons, Jordan's retaliation claims fails.

### B. Tort Claims

Jordan also alleges that agents of the USPS, in the course of handling her OWCP claims, subjected her to slander, libel, defamation, and intentional infliction of emotional distress. According to Jordan, Wright-Dillon and others published defamatory information in a series of letters and then placed them in her OWCP case file. (*See* Compl. 1–8.) Jordan seeks recovery under the FTCA. These claims fail because Jordan cannot demonstrate the elements of any single claim, and, furthermore, because the Federal Tort Claims Act bars her from bringing them in federal court.

The FTCA waives the Federal Government's sovereign immunity for certain torts. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Before filing suit, however, a claimant must first present his or her claim to the federal agency whose activities gave rise to it. 28 C.F.R. § 14.2(b)(1). Jordan admits that she did not file a claim with the USPS seeking redress for defamation and intentional infliction of emotional distress. (Plaintiff's Brief 6 ("The Plaintiff does not dispute she did not file her administrative remedies because she was unaware she had to file an administrative claim.").) In addition, 28 U.S.C. § 2680(h) specifically states that the

waiver does not allow parties to sue the Federal Government for libel or slander.[9] "Defamation" is simply Virginia's term for libel and slander. The Government has, therefore, not waived sovereign immunity for defamation suits, so Jordan's defamation claim must fail.

Moreover, the plaintiff's evidence does not establish the tort of defamation. To prove defamation, a plaintiff must show (1) the publication of (2) a false, defamatory statement (3) with the necessary intent. *See PBM Prod., LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390, 399 (E.D. Va. 2009). "[W]hether statements complained of in a defamation action fall within the type of speech which will support a state defamation action is a matter for the trial judge to determine as a matter of law." *WJLA-TV v. Levin*, 264 Va. 140, 152 (2002) (quoting *Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998)). Jordan cannot show that the statements made by Wright-Dillon, or anyone else associated with the plaintiff's OWCP claims, constitute defamation.

Jordan seems to infer defamation from Wright-Dillon's letter addressing inconsistencies and other problems with Jordan's OWCP claims. Although Wright-Dillon arguably published this letter, Jordan cannot establish the remaining elements of the tort.

Jordan does not claim that any USPS employee made untrue statements about her. At times, she demands that Wright-Dillon offer written proof of the assertions in the letter, but Jordan does not actually deny the allegations therein. (*See* Plaintiff's Brief, Ex. D at 2–4; Ex. F.) Even more importantly, Jordan offers no *proof* of their falsity, which she must do to survive summary judgment and ultimately prevail on a defamation claim.

---

[9] *See* 28 U.S.C. § 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.").

9

Furthermore, at no point does Jordan allege that Wright-Dillon made the statements in the letter with defamatory intent. Virginia adheres to a negligence standard for intent, demanding that a plaintiff prove by a preponderance of the evidence that "the defendant either knew the statement was false or, believing it to be true, lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth." *Food Lion*, 250 Va. at 150. The statements in the first Wright-Dillon letter indicate the opposite of negligence: after reviewing Jordan's documentation and requesting additional information from Morris-Griffith, Wright-Dillon's letter sought to ascertain the truth about Jordan's OWCP claims. Furthermore, Wright-Dillon had reasonable grounds for her statements. She wrote her letter and initiated the reevaluation of Jordan's OWCP claims in response to inconsistent and backdated medical notes that Jordan personally submitted. (Defendant's Brief, Ex. 2, ¶¶ 4–5.) The documents before Wright-Dillon adequately supported the contentions and questions in her letter. In the end, the Court finds that neither OWCP nor any of its staff members acted with the requisite defamatory intent or made false statements about Jordan. The Court therefore grants summary judgment to the defendant on Jordan's defamation claims.

Just as the plaintiff's claim of defamation fails, so does her claim of intentional infliction of emotional distress. This tort consists of four elements: (1) the wrongdoer acted intentionally or recklessly; (2) the conduct offended generally accepted standards of decency and morality and was thus outrageous and intolerable; (3) a causal connection exists between the wrongdoer's conduct and the victim's emotional distress; and (4) the victim's emotional distress was severe. *Womack v. Eldridge*, 215 Va. 338, 342 (1974). The law does "not favor[ ]" such claims because of the problems associated with proving an actual injury to the mind or emotions in the absence of accompanying physical injury. *Supervalu, Inc. v. Johnson*, 276 Va. 356, 370 (2008). As a

result, liability arises only with emotional distress so extreme and severe that no reasonable person could be expected to endure it. *Russo v. White*, 241 Va. 23, 27 (1991).

The Wright-Dillon letter and associated investigation of Jordan's OWCP claims fall far short of outrageous and intolerable conduct. The statements within the letter and the request for a second opinion come nowhere close to offending generally accepted standards of decency and morality, and thus no question remains for a jury to decide. Consequently, the Court grants summary judgment to the defendant on Jordan's intentional infliction of emotional distress claim.

## IV.   CONCLUSION

For the reasons set forth above, the Court grants the defendant's motion for summary judgment on all claims.

The Court shall enter an appropriate order.

Date: June 13, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge